979 F.2d 823
 Prod.Liab.Rep. (CCH) P 13,384
Robert C. MOSHER and Margaret M. Mosher, Plaintiffs-Appellants,
v.
SPEEDSTAR DIVISION OF AMCA INTERNATIONAL, INC., f/k/a
Speedstar Division of Koehring Company, Koehring
Company, a Delaware corporation,
Defendants-Appellees.
 No. 91-3273.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 21, 1992.
 
 John P. Graves, Jr., Chartered, Sarasota, Fla., Donald E. Pervis, Donald E. Pervis & Associates, P.A., Bradenton, Fla., for plaintiffs-appellants.
 Dickinson, O'Riorden, Gibbons & Shields, P.A., Claire L. Hamner, Richard R. Garland, Sarasota, Fla., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and GODBOLD, Senior Circuit Judge.
 TJOFLAT, Chief Judge:
 
 
 1
 Appellants Robert C. Mosher and Margaret M. Mosher appeal from an adverse verdict in this products liability suit brought under Florida law against the Speedstar Division of AMCA International, Inc. (Speedstar). Because the district court's jury charge was erroneous and prejudicial, we reverse and remand for a new trial.
 
 I.
 
 2
 Robert C. Mosher was a water well driller. On July 9, 1984, he was employed by Guest Well Drilling Company, and was engaged in drilling several water wells on the site of the Manatee Junior College South Campus in Sarasota County, Florida. He was operating a Model 135 drilling rig manufactured by Speedstar. Although aware of the danger posed by overhead or buried power lines, Mosher had not checked carefully for their presence. There had been no power lines in the vicinity of the other wells which Mosher had drilled on the campus; however, a 7,200 volt distribution line from Florida Power & Light ran almost directly over the site at which he was to drill. While raising the derrick on the drilling rig, Mosher inadvertently caused the rig to come into contact with this line. When his foot slipped from the rig and touched the earth, Mosher became the primary conductor of electricity to the ground, and was seriously injured.
 
 
 3
 Mosher and his wife filed suit against Speedstar in June 1988, under theories of strict products liability and negligent design. The case went to trial on March 16, 1990. Mosher argued that the rig was defective and Speedstar was negligent in that (1) the derrick lacked an insulating guard, (2) the rig had no grounding device, (3) the rig included no proximity warning system, and (4) the operator's station had no warning placards alerting the operator to the danger of contacting high voltage power lines. Speedstar responded that since Mosher was aware of the hazard posed by such lines, (1) he was negligent in operating the rig without checking for high voltage wires, (2) his knowing misuse of the rig made him the sole cause of the accident, and (3) he assumed the risk of the injury from an open and obvious danger. At the close of evidence the court denied both parties' motions for directed verdict, and the jury returned a verdict in favor of Speedstar on both theories.
 
 
 4
 Mosher brings this appeal, claiming that (1) he was entitled to a directed verdict on "the liability questions of defect and/or negligence," (2) the court so erroneously instructed the jury that it in effect directed a defense verdict, and (3) the prejudicial effect of the instructions was magnified by the "improper and prejudicial comments and conduct of defense counsel." Because we reverse and remand for a new trial based on the erroneous jury charge, we need not address Mosher's other contentions.
 
 II.
 
 5
 Mosher contends that the district court misstated the Florida law on the preclusive effect of his negligence, thereby confusing and misleading the jury to his detriment. We conclude that Mosher is correct.
 
 
 6
 Perhaps the most important duty of the trial judge is the careful, accurate instruction of the jury as to the law that they must apply to the facts that they find. The role of the appellate court, in reviewing a trial court's jury instructions, is to assure "that the instructions show no tendency to confuse or to mislead the jury with respect to the applicable principles of law." Rohner, Gehrig & Co. v. Capital City Bank, 655 F.2d 571, 580 (5th Cir. Unit B Sept. 1981);[1] see also United States v. Myers, 972 F.2d 1566, 1574 (11th Cir.1992). We will not disturb a jury's verdict unless the charge, taken as a whole, is erroneous and prejudicial. National Indep. Theatre Exhibitors, Inc. v. Charter Fin. Group, Inc., 747 F.2d 1396, 1402-03 (11th Cir.1984); see also McElroy v. Firestone Tire & Rubber Co., 894 F.2d 1504, 1509 (11th Cir.1990).
 
 
 7
 We will reverse the verdict of the jury only where the appellant shows both error and prejudice. Subpart A examines Mosher's claim that the district court committed error in its instructions on "open and obvious" danger and product misuse. We conclude that it did. Subpart B considers whether Mosher was prejudiced by this error. We conclude that he was.
 
 A.
 
 8
 Mosher sued Speedstar under strict products liability and negligent product design.[2] The court gave instructions on both theories.[3] Pursuant to Fed.R.Civ.P. 51,[4] Mosher objected to two of the court's jury instructions.[5] Mosher claims that the instructions on patent danger and product misuse erroneously suggested that these were absolute bars to liability under Florida law.[6] We agree.
 
 
 9
 The court instructed the jury that a manufacturer was not required to warn against obvious dangers:
 
 
 10
 The law does not require that a manufacturer or a seller warn a user of a product about dangers which are obvious to all.
 
 
 11
 ....
 
 
 12
 If you determine that the injury was caused by a dangerous property or characteristic that would have been known to anyone with common knowledge in the community, then the product cannot be defective because of the defendant's failure to warn.
 
 
 13
 Record, vol. 7, no. 78 at 72 (emphasis added).[7] The court gave the following instruction concerning product misuse:
 
 
 14
 Because a product is defective only when it is unsafe for its intended use, a finding of a defect may be precluded when the plaintiff was injured when he was using the product in an abnormal manner. Thus, abnormal use by the plaintiff which was not reasonably foreseeable by the manufacturer will negate liability.
 
 Id. at 72-73 (emphasis added).[8]
 
 15
 Florida law considers both patent dangers and foreseeable product misuse as elements of comparative negligence that do not bar recovery. The landmark case of Auburn Machine Works Co. v. Jones expressly rejected the patent danger doctrine:
 
 
 16
 [T]he obviousness of the hazard is not an exception to liability on the part of the manufacturer but rather is a defense by which the manufacturer may show that the plaintiff did not exercise a reasonable degree of care as required by the circumstances.... * [T]he principles of comparative negligence apply where this defense is raised.
 
 
 17
 366 So.2d 1167, 1167 (Fla.1979).[9] Florida law, therefore, does not bar recovery in design defect cases merely because the danger is open and obvious to the user. A patent danger may only serve as a bar to liability "where the complaint alleges that the negligence is solely in the lack of a warning," not "where the complaint alleges negligence in design." Babine v. Gilley's Bronco Shop, Inc., 488 So.2d 176, 178 (Fla.Dist.Ct.App.1986) (quoting the opinion of the trial court).[10] The instant case, however, is not a pure failure to warn case--Mosher has a well-developed design defect claim. The instruction was therefore erroneous.
 
 
 18
 The misuse instruction was also erroneous. The court may have led the jury to conclude that the defendant was not liable because Mosher "misused" the rig by contacting the power lines. The instruction is misleading in two ways. First, the record clearly indicated that the "misuse" of raising the derrick into power lines was foreseeable--and foreseen--by Speedstar. There was no issue before the jury concerning any unforeseeable misuse, and no unforeseeable misuse instruction should have been given. Second, Florida law does not suggest that misuse will "negate liability" as the district court instructed. Instead, misuse is simply to be considered as part of the comparative fault calculus. See Auburn Machine, 366 So.2d at 1171-72; West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla.1976).[11]
 
 
 19
 We conclude that the court's instructions did not accurately reflect the Florida law of products liability. The court gave inappropriate instructions on patent danger and product misuse. This was error.
 
 B.
 
 20
 We will not overturn a jury verdict because of erroneous jury instructions unless there is also a showing of prejudice. See Pesaplastic, C.A. v. Cincinnati Milacron Co., 750 F.2d 1516, 1525 (11th Cir.1985). "To determine the prejudicial effect of an incorrect statement of the law, the charge must be viewed in its entirety." Somer v. Johnson, 704 F.2d 1473, 1477 (11th Cir.1983). Mosher argues that the erroneous instructions given below may have caused the jury to return defense verdicts on both negligence and strict liability. Again, we agree.
 
 
 21
 Erroneous defense instructions are not normally prejudicial to the plaintiff unless the jury finds liability on the part of the defendant. See Voynar v. Butler Mfg. Co., 463 So.2d 409, 413 (Fla.Dist.Ct.App.1985) (stating that there would be no reversible error in omission of proper instruction regarding open and obvious danger where jury found that product was not defective). However, where the court's instructions improperly characterize the defenses as barring a claim or negating an element of the cause of action, our review is appropriate. Here, the district court's instructions on open and obvious danger, and product misuse may have preempted the jury's consideration of Mosher's claims.
 
 
 22
 Based on the court's instructions, the jury could have found that although Speedstar was negligent in not providing sufficient safety devices and warnings, Mosher was barred from recovery because he was aware of the danger that power lines posed. As to Mosher's strict products liability claim, the jury could have found that Mosher misused the drilling rig by contacting the power lines and, thus, that the rig was not defective. Either conclusion would have been incorrect under Florida law. As we have noted in a similar situation, "the possibility that the jury may have employed the wrong criterion of liability to exonerate the defendants requires a new trial." Somer, 704 F.2d at 1478 (footnote omitted). We thus conclude that the plaintiff was prejudiced by the court's erroneous instructions.
 
 III.
 
 23
 The district court's erroneous instructions may have confused and misled the jury as to the applicable law, resulting in prejudice to Mosher. For this reason, we reverse and remand for a new trial.
 
 
 24
 IT IS SO ORDERED.
 
 
 
 [1]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981
 
 
 [2]
 Florida permits a plaintiff simultaneously to pursue theories of strict liability and negligence against the manufacturer of a product. See Baione v. Owens-Illinois, Inc., 599 So.2d 1377, 1378 (Fla.Dist.Ct.App.1992); Ford Motor Co. v. Hill, 404 So.2d 1049, 1052 (Fla.1981)
 
 
 [3]
 The court refused to give the Florida Standard Jury Instructions that Mosher had requested. There was no error in this, however. A litigant has the right to have the jury correctly instructed on the applicable law, but has no right to specific wording. American Family Life Assurance Co. v. United States Fire Co., 885 F.2d 826, 836 (11th Cir.1989). The trial court has broad discretion in fashioning the language used. Andres v. Roswell-Windsor Village Apartments, 777 F.2d 670, 673 (11th Cir.1985)
 
 
 [4]
 Rule 51 provides:
 At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury. The court, at its election, may instruct the jury before or after argument, or both. No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.
 
 
 [5]
 Mosher made no other objections to the charge before jury deliberations. On appeal, he argues that the court erroneously stated the elements of strict products liability. While this may be true, he did not preserve the error for our review
 
 
 [6]
 The content of the jury instructions in the instant case should have reflected the relevant products liability law of Florida. See Pesaplastic, C.A. v. Cincinnati Milacron Co., 750 F.2d 1516, 1525 (11th Cir.1985)
 
 
 [7]
 Mosher properly objected to this instruction after the charge was given and before the jury retired. See Fed.R.Civ.P. 51
 
 
 [8]
 Again, Mosher properly objected to this instruction after the charge was given and before the jury retired. See Fed.R.Civ.P. 51
 
 
 [9]
 Auburn Machine involved the review of summary judgment in favor of a defendant manufacturer of a trencher. The plaintiff, who had suffered amputation of his leg after it was caught in the exposed chain of the machine, argued that the obvious danger of the trencher should not be a bar to the manufacturer's liability. The Florida Supreme Court agreed. The court was concerned that "[t]he patent danger doctrine encourages manufacturers to be outrageous in their design, to eliminate safety devices, and to make hazards obvious." Id. at 1170
 
 
 [10]
 In Babine, the First District Court of Appeal upheld summary judgment entered for a manufacturer of a mechanical bull. The mechanical bull had been installed in a nightclub, and a patron of the nightclub was injured when he struck his head on the floor after being thrown from the device. The bull was intended as a trainer for rodeo riders, and was designed to be used with a "landing pad." The nightclub had replaced this pad with mattresses in such a way that some parts of the floor were unpadded
 The appellate court agreed with the trial court that the bull was "not unreasonably dangerous because of its design as there [was] no competent evidence in the record to show that the product failed to perform as safely as expected when used as designed, and as intended, with the recommended pad. The manufacturer could not reasonably foresee that the product would be operated without the recommended pad." Id. at 177. The court distinguished Auburn Machine, concluding that "there, it appears that the missing safety shield which led to the claimant's injury was an integral part of the machine in question and the machine's design constituted a departure from reasonably safe and sound engineering practices." Id. at 178.
 
 
 [11]
 Clark v. Boeing Co., 395 So.2d 1226 (Fla.Dist.Ct.App.1981), is not to the contrary. In Clark, a flight attendant opened the aft cabin door of a Boeing 727 to assist a passenger while the airplane was preparing for takeoff. She sued the manufacturers of the jet engines and airframe, claiming that the resulting exposure to the noise and fumes of the jet engines caused her to contract multiple sclerosis. The trial court dismissed the complaint and the appellate court affirmed: "A knowing misuse of a manufacturer's product creates no liability on the part of the manufacturer. Under that circumstance, the sole cause of the injury is the misuse of the product." Id. at 1229. In the instant case, Mosher did not "knowingly" misuse the product in such a way as to be the sole proximate cause of the accident
 Other than sole proximate cause, Florida does not recognize the traditional bars to tort liability. Even assumption of the risk is subsumed under comparative negligence in Florida law. Blackburn v. Dorta, 348 So.2d 287, 293 (Fla.1977); see also Mazzeo v. City of Sebastian, 550 So.2d 1113, 1115 (Fla.1989).