[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11501
Non-Argument Calendar

_____

D.C. Docket No. 4:16-cv-00323-HLM

UNITED STATES OF AMERICA,
upon the relation and for the use and benefit of
TENNESSEE VALLEY AUTHORITY,

Plaintiff-Appellee,

versus

DONALD RICHARDS BRADFORD,
JON WILLIAM BRADFORD

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 29, 2018)

Before TJOFLAT, WILSON and JULIE CARNES, Circuit Judges.

PER CURIAM:

In this eminent domain action, Donald and Jon Bradford (Defendants) appeal the final judgment entered in their case and the District Court's denial of their motion for a new trial.  In the trial-court proceedings, a jury found that the taking of Defendants' property did not entitle them to incidental damages.  On appeal, Defendants argue that the District Court erred by (1) excluding an exhibit proffered by Defendants and refusing to allow their expert witness to testify about the exhibit, (2) allowing Plaintiff's closing argument to violate motions in limine, and (3) giving the jury two erroneous instructions.  We take each argument in turn and ultimately affirm.

## I.

A district court's ruling on the admissibility of evidence, including expert witness testimony, is reviewed for an abuse of discretion.  *United States v. Jayyousi*, 657 F.3d 1085, 1106 (11th Cir. 2011); *Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1301 (11th Cir. 2007).  An abuse of discretion occurs when the district court's decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact."  *United States v. Gamory*, 635 F.3d 480, 492 (11th Cir. 2011).

Defendants argue that the District Court erred by excluding as hearsay an exhibit purportedly providing them a right to build a railroad spur across a public access road in order to provide their property railroad access.  The exhibit, they

contend, was admissible under the ancient-documents hearsay exception, Fed. R. Evid. 803(16), which establishes the admissibility of a "statement in a document that was prepared before January 1, 1998, *and whose authenticity is established*." (Emphasis added). Defendants state that the District Court "declined to consider" the testimony they proffered to authenticate the document.

The District Court, however, did in fact consider the authentication testimony, evidenced by the reasoning it offered in its order denying Defendants' motion for a new trial:

> The document is clearly hearsay, and it is unauthenticated. None of Defendants' witnesses claimed to have personal knowledge relating to Defendants' Exhibit . . . at the time it was allegedly prepared, and the individual who allegedly prepared the document is deceased. Defendants' Exhibit . . . is unsigned and undated, and it was not recorded with the Clerk of the Whitfield County Superior Court.

Given these circumstances, coupled with the fact that Defendants proffered no testimony evincing that the writing accurately reflected Whitfield County's intent to convey a property right, the District Court did not abuse its discretion in excluding the exhibit. *See* Fed. R. Evid. 901(b)(8); *see also Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1376 (3d Cir. 1991) ("[T]he point of a Rule 901(b)(8) inquiry is to determine whether the documents in question are, in fact, what they appear to be.").

The District Court also did not err in precluding Defendants' expert appraiser from testifying about the excluded exhibit. To be sure, an expert witness

3

may "express an opinion . . . even though his opinion is based in part or solely upon hearsay sources." *United States v. Williams*, 447 F.2d 1285, 1290 (5th Cir. 1971).[1]  The underlying rationale is that "when the expert witness has consulted numerous sources, and uses that information, together with his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not as hearsay in disguise." *Id.*  But the Court clarified that it was not precluding Defendants' expert from testifying about potential railroad access; he merely could not testify concerning railroad access purportedly granted in the excluded exhibit.  Had Defendants' expert based his entire opinion, as it related to the value of railroad access, on the exhibit, his testimony would have been "hearsay in disguise." *See id.*  By denying the expert the chance to testify about the exhibit while allowing testimony to be based upon other sources, the District Court properly prevented such a possibility.[2]

## II.

Where, as here, a party fails to object to the opposition's alleged violations during closing argument, we review under a plain error standard.  *See* Fed. R. Evid. 103.  To correct plain error, we first must find an error that is plain and that affects substantial rights.  *United States v. Swatzie*, 228 F.3d 1278, 1281 (11th Cir. 2000).

---

[1] Fifth Circuit decisions issued on or before September 30, 1981 are binding in our Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

[2] Tellingly, Defendants chose not to examine their expert at all on the railroad issue, presumably due to a lack of other sources substantiating their property right to railroad access.

"[A] finding of plain error is seldom justified in reviewing argument of counsel in a civil case." *Oxford Furniture Cos. v. Drexel Heritage Furnishings, Inc.*, 984 F.2d 1118, 1128 (11th Cir. 1993) (quotation omitted). But we will nonetheless order a new trial if "the interests of substantial justice are at stake." *Id.*

After careful review of the record and the District Court's decision denying Defendants a new trial, we conclude that the Court did not err. Defendants' core contention is that in its closing argument Plaintiff improperly referred to an amount that Defendants were destined to receive whether or not they also received incidental damages. They posit that a motion in limine prevented mention of such an amount. However, the jury was aware that the parties had already stipulated that Defendants would receive the mentioned amount. And further, Defendants brought up the amount in their own closing argument. The District Court certainly did not plainly err in refusing to grant a new trial on this basis.[3]

### III.

"We review a jury instruction deferentially. However, we should grant a new trial if the instructions did not accurately reflect the law in such a way that we are left with a substantial and ineradicable doubt as to whether the jury was

---

[3] Defendants' also assert, summarily, that Plaintiff "argued [Defendants] were attempting to establish a new legal theory which could be used in other eminent domain cases," in violation of the District Court's order prohibiting argument regarding "amounts paid by Plaintiff to the Defendants or other condemnees for property interests taken pursuant to the power of eminent domain." Defendants do not expand upon why or how Plaintiff's argument violated the order. The Court not granting a new trial on this basis was not plain error.

properly guided in its deliberations."  *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1196 (11th Cir. 2004) (quotations and citations omitted).  "We will not overturn a jury verdict because of erroneous jury instructions unless there is also a showing of prejudice."  *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 979 F.2d 823, 826 (11th Cir. 1992).

A.

Defendants object first to the following instruction:

> In determining value in damages, but as to *damages based on the personal plans or opinions or hopes of a landowner as to development or hopes of development are not allowable for the purpose of determining damages*.  It is only the loss of transferable value from one owner to another in the marketplace that is compensable.  It would not be proper to award an owner damages for frustration of *any plans* or peculiar uses he may have or hope for the subject tract.  This is true because frustration of an owner's plans or an owner's hopes or expectations of an owner in payment of just compensation for appropriation of an interest in property are essentially different things.

(Emphasis added).  They argue that the italicized portions misstate the law by improperly precluding the jury from considering any plans they may have had for the subject tract—"to the layperson juror, this instruction would [preclude consideration of] plans for future industrial development."

The District Court's instruction did not prejudice Defendants and therefore does not warrant a new trial.[4]  Not only was the subject tract undeveloped, but

---

[4] Because Defendants did not prove that they suffered prejudice, we do not reach the question of whether the instruction misstated the law.

Defendants provided evidence only as to the bare possibility of developing the land for industrial use; as the Court put it, "hopes for the future which have not yet materialized." Moreover, the parties stipulated that the fair market value of the tract would be valued as industrial-use property.[5] Indeed, the District Court instructed the jury:

> Both the United States and the landowners, as I've pointed out to you, agree that the highest and best use of the property is industrial, *both before and after the taking*. Your determination of the fair market value before and after the taking should be consistent with that use and the stipulation made as to value.[6]

(Emphasis added). Defendants could not have been prejudiced by the contested instruction, as the land's use (and potential use) were accounted for in the parties' stipulation and relayed to the jury.

## B.

> Finally, Defendants also object to the District Court's instruction that

> the landowners may use the easement and right-of-way area in any way which does not affect the right of the United States to use the area for electric power lines. The landowners may still pass along and across, fence and cross fence, build roads and driveways across, plant shrubbery, and have their animals graze upon the easement area.

Defendants contend that this instruction states not the law, but rather interprets facts in the record, thus invading the province of the jury, and does

---

[5] The stipulation stated, "The subject property's highest and best use as of the date of taking was for industrial use." This "highest and best use" stipulation informed the stipulated value of the property immediately before the taking, which was $590,000.

[6] Defendants do not object to this instruction.

7

so in a confusing manner.  Defendants add that the statements in the

instruction "are at least arguably untrue."

At trial, however, Defendants objected only to a limited portion of this

instruction, stating:

> In [the] [i]nstruction . . . the language "fence" and "cross fence" as a
> condemnee right is expressed, and we believe that that's contrary to
> the quality of the easement which says that we can't do anything that
> would interfere with TVA's use of the property, and certainly fencing
> or cross fencing will do that and it leads to the impression that the
> easement is not as burdensome as it is.

Defendants have therefore waived any argument outside of their objection to the

language "fence" and "cross fence."  *See Badger v. S. Farm Bureau Life Ins. Co.*,

612 F.3d 1334, 1342 (11th Cir. 2010).[7]  Their relevant argument on appeal is that

their ability to fence and cross fence the property would be subject to limitations

and contingencies not noted in the charge.  Thus, Defendants aver, the jury should

have been aware of these limitations in order to fully understand the easement's

intrusiveness.  This bare point, regarding one small detail in one of numerous

instructions, does not leave us with "a substantial and ineradicable doubt as to

whether the jury was properly guided in its deliberations."  *See Home Shopping*

*Network*, 369 F.3d at 1196.  Indeed, we have substantial doubt that the instruction

---

[7] As to the portions of the instruction which Defendants failed to object, they have not proven that the District Court erred plainly.  *See* Fed. R. Civ. P. 51(d)(2).

caused the jury to mischaracterize the nature of the easement, especially to the extent of prejudicing Defendants and rendering the verdict suspect.

IV.

In light of the foregoing, the final judgment entered by the District Court and its denial of Defendants' motion for a new trial are affirmed.

**AFFIRMED.**