John DICZOK, Plaintiff,

v.

CELEBRITY CRUISES, INC., Defendant.

CASE NO. 16–21011–CIV–SEITZ/TURNOFF

United States District Court, S.D. Florida.

Signed 06/20/2017

Filed 06/21/2017

imate cause of his fall. Diczok has responded to the Motion [DE 52] and Celebrity has filed its Reply [DE 65]. In addition, the Court held a hearing on June 15, 2017, where the parties provided additional argument.

Viewing the record in the light most favorable to Diczok, genuine issues of material fact exist as to (1) whether Celebrity created a dangerous condition by removing the chairs from around the table, (2) whether the table was open and obvious to Diczok, and (3) whether the table was the proximate cause of Diczok's injury. Celebrity's Motion is granted-in-part as to the negligent design claim because the record evidence is insufficient as a matter of law to support this theory.

Elizabeth Letitia Bryan, Christopher Bond Smith, John Heyward Hickey, Hickey Law Firm, P.A., Miami, FL, for Plaintiff.

David James Horr, Raul Gabriel Delgado, II, Horr Novak & Skipp, P.A., Nicholas Allen Applin, Royal Caribbean Cruises Ltd., Miami, FL, for Defendant.

## ORDER GRANTING–IN–PART MOTION FOR SUMMARY JUDGMENT

PATRICIA A. SEITZ, UNITED STATES DISTRICT JUDGE

THIS MATTER is before the Court on Defendant Celebrity Cruises, Inc.'s Motion for Summary Judgment [DE 43]. Plaintiff John Diczok filed a single-count negligence action against Celebrity after allegedly tripping over the base of a small table located in the *Rendevous Lounge* ("Lounge") on Celebrity's cruise ship. Celebrity moves for summary judgment, arguing that Diczok's failure to pay attention to an open and obvious table was the prox-

### STATEMENT OF UNDISPUTED MATERIAL FACTS

On May 3, 2015, John Diczok and his travel companion Jean Campbell were passengers onboard the *Celebrity Summit* cruise ship. [DE 52 at ¶¶ 1–2.] At approximately 5:30 PM—two hours after the ship's "muster drill" had concluded—Diczok and Campbell were traveling towards the front of the ship through the *Rendevous Lounge. Id.* ¶¶ 3–5. Other passengers were walking through the Lounge as well. *See id.* ¶ 8. After Diczok turned the corner to exit the Lounge, he tripped near a small table on his left side, fell to the floor and sustained injuries to his shoulder.[1] [DE 43 at ¶ 7; DE 52 at ¶ 7.] Diczok contends that he tripped over the outside corner of the table's base. [DE 65 at ¶ 47.] However, the cause of Diczok's fall remains in dispute. *Id.*

In his complaint, Diczok claims that Celebrity (1) negligently designed the Lounge with small tables placed in dimly lit walkways; (2) created a dangerous con-

---

1. The nature of Diczok's injuries are in dispute.

dition by removing the chairs from the table; and (3) failed to warn Diczok of the dangerous condition. Celebrity asserts with regards to the negligent design claim that there is no evidence of Celebrity's actual involvement in the design of the ship. With regards to Diczok's other claims, Celebrity argues that the record fails to show Celebrity's notice of a dangerous condition or that the alleged condition was the proximate cause of Diczok's fall.

### STANDARD

Summary judgment is appropriate when the pleadings show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). In making this assessment, the Court views the record and all factual inferences therefrom in the light most favorable to the non-moving party. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997).

Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must provide evidence to show there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party may not rely solely on the pleadings, but must show by record evidence, in the way of affidavits, depositions, answers to interrogatories and admissions, that facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

### DISCUSSION

Federal maritime law governs this case. *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990). To prevail on a negligence claim, Diczok must prove that: (1) Celebrity owed Diczok a duty; (2) Celebrity breached that duty; (3) the breach was the proximate cause of Diczok's injury; and (4) Diczok suffered damages. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). Cruise ship operators owe their passengers a duty of reasonable care under the circumstances. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). For purposes of summary judgment, the parties do not dispute that Celebrity owed Diczok a duty of reasonable care or that he suffered damages.

#### A. Breach

To breach the duty of reasonable care, the cruise line must have actual or constructive notice of the risk-creating condition. *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). However, where a cruise ship operator created the unsafe or dangerous condition, a plaintiff need not prove notice in order to show negligence. *Long v. Celebrity Cruises, Inc.*, 982 F.Supp.2d 1313, 1316–17 (S.D. Fla. 2013) (citing *Rockey v. Royal Caribbean Cruises, Ltd.*, 2001 WL 420993, at *4 (S.D. Fla. February 20, 2001) and *McDonough v. Celebrity Cruises, Inc.*, 64 F.Supp.2d 259, 264 (S.D.N.Y. 1999)). The mere fact that an accident occurred does not give rise to a presumption of a dangerous condition. *Isbell v. Carnival Corp*, 462 F.Supp.2d 1232, 1237 (S.D. Fla. 2006).

Celebrity argues that Diczok fails to demonstrate notice of any dangerous con-

dition. However, Diczok is not alleging that an otherwise safe area was made hazardous by the sudden presence of some object (such as a puddle of water on the ground or a protruding screw). Rather, Diczok predicates his theories of negligence on Celebrity's creation of a dangerous condition, either in its design of the Lounge or by removing the chairs and exposing the table's base. [DE 52 at 1–2.] Under both theories, no notice is required.[2] *See Long*, 982 F.Supp.2d at 1316. The question then becomes whether Celebrity created a dangerous condition.

### 1. Celebrity did not actually participate or approve the design of the subject table.

██ Liability based on negligent design requires proof that the ship-owner or operator "actually created, participated in or approved" the alleged improper design. *Groves v. Royal Caribbean Cruises, Ltd.*, 463 Fed.Appx. 837, 837 (11th Cir. 2012) (affirming summary judgment where plaintiff presented no evidence of the cruise line's actual involvement in the design of the area of injury); *see also Whelan v. Royal Caribbean Cruises, Ltd.*, 2013 WL 5583970, at *4 (S.D. Fla. Aug. 14, 2013) (denying summary judgment based on issues of material fact as to defendant's

participation in the design of a ship's nightclub).

██ Diczok references statements made by Celebrity's corporate representative Amanda Campos to argue that Celebrity "actually participated in or approved" the design of the Lounge. Ms. Campos stated that Celebrity provided the shipbuilder with the design specifications and "overall look" for the Lounge. [DE 48 (Campos Depo. 59:2–25; 60:1–2; 83:14–19).] Ms. Campos also stated that Celebrity had the opportunity to review design schematics and request changes while the ship was being built. *Id.* at 76:8–18; 77:2–3. While these statements demonstrate Celebrity's *ability* to participate in and approve the design of the Lounge, they do not show *actual* participation or approval. Moreover, Celebrity's shipbuilding contract [DE 67] states: "Notwithstanding (i) that elements of the vessel's design are to be provided to the builder by the shipowner or its subcontractors and (ii) that all test results, plans and drawing for the vessel are ... to be submitted to, and approved by [Celebrity], it is expressly understood and agreed that *the builder shall be solely responsible for the design of the vessel,* other than the design of owner supplied equipment at the time provided to the builder."[3] (emphasis added.)

2. Assuming notice is required, Diczok offers no evidence that Celebrity was on notice of the alleged dangerous condition. While Diczok references multiple "trip and falls" in similar lounges, none of these incidents are substantially similar to Diczok's fall. For instance, one month prior to Diczok's incident, a passenger aboard the *Celebrity Infinity* tripped over a small table in the ship's Rendevous Lounge. [DE 52–6 at 6.] The passenger stated: "It was very crowded. There was a short table (3 ft) with no chairs. I turned and fell over the table. Several ship crew witnessed it." *Id.* Diczok on the other hand claims to have tripped over the protruding base of a table as he walked by. An incident where a person merely "fell over" a small

table in a similar lounge is not substantially similar. *Cf. Whelan*, 2013 WL 5583970, at *4 (finding that a separate fall from the exact same step five days prior was a substantially similar incident).

3. Diczok attached an excerpt from the building contract to a Notice filed on June 15, 2017. [DE 67.] In the Notice, Diczok states that the contract was also attached as "Exhibit E to Plaintiff's Response to Defendant's Motion for Summary Judgement [DE 52–5]." So the record is clear, Exhibit E to Plaintiff's Response is the transcript of Ms. Campos' second deposition dated March 2, 2017. The shipbuilding contract was not attached as an exhibit to Plaintiff's Response.

In *Whelan*, a passenger sued the cruise line after falling from "a single step" in the ship's nightclub. 2013 WL 5583970, at *1. Plaintiff alleged that the step was a dangerous condition created by the cruise line in its design of the ship. *Id.* at *4. The Court denied summary judgment based on testimony that "because the [nightclub] was very different . . . there would have been some form of presentation . . . with renderings." *Id.* The Court further suggested that more general statements about a cruise line's involvement in the design of a ship would not be sufficient proof of actual involvement. *Id.* Here, there is nothing in the record to suggest that Celebrity was presented with renderings showing the placement and dimensions of each individual table. Instead, Diczok has merely put forth evidence that Celebrity participated in the overall design of the ship. For purposes of a negligent design claim, more is required.

2. *Whether Celebrity Created A Dangerous Condition by Removing the Chairs is A Question of Material Fact.*

■ Celebrity contends that the table is not a dangerous condition and that Diczok's only evidence otherwise is the fact that he tripped. However, Diczok presented photographic evidence that the corners of the table's square base extend out further than its round table top. In addition, the corner of the table where Diczok allegedly tripped points towards the walkway. [DE 46 (Diczok Depo.) 202: 23–25; 203: 1–5.] With regards to the lighting, Diczok testified that the Lounge was "very dark" at the time of the incident. *Id.* at 89:24–25; 90:1–5. He further testified that the table was dark in color and blended in with the wall behind it and the dark carpet. *Id.* 205:3–14. Furthermore, the chairs that normally surround the table were allegedly removed for the muster drill. [*Id.* at 86:1–15.] The photographs submitted by Diczok

indicate that the chairs are a yellow or gold color. Based on these allegations, questions of fact exist as to whether Celebrity created a dangerous condition by removing the chairs and exposing the dark table base near the walkway.

3. *Whether Celebrity had a Duty to Warn of the Table is an Question of Fact.*

■ The duty of reasonable care includes a duty to warn passengers of dangers the cruise line either knows or should know exist but are neither open and obvious to the passenger. *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F.Supp.2d 1308, 1322–23 (S.D. Fla. 2011). Celebrity argues that Diczok's failure to show notice is fatal to his duty to warn theory. However, as already discussed, notice is not required when a cruise line is alleged to have created the dangerous condition. *See Long*, 982 F.Supp.2d at 1316. Moreover, Diczok testified that he did not see the table prior to tripping. [DE 46 at 105:21–25; 106:1–6.] His assertion is supported by allegations that the dark table blended in with the dark wall and the dark carpet and that the yellow chairs around the table had been removed. Therefore, the key factual as to whether Celebrity had a duty to warn will rest on the jury's determination whether the table was open and obvious.

B. **Proximate Cause**

■ With regards to proximate cause, federal courts sitting in admiralty may draw from "state law applying proximate causation requirements." *Exxon Co. U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 839, 116 S.Ct. 1813, 135 L.Ed.2d 113 (1996). Proximate cause under Florida law requires "evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about

the result." *In re Royal Caribbean Cruises, Ltd.*, 991 F.Supp.2d 1171, 1183 (S.D. Fla. 2013) (quoting *Gooding v. University Hosp. Bldg., Inc.*, 445 So.2d 1015, 1018 (Fla. 1984)). Celebrity argues that Diczok's own lack of attention to where he was walking proximately caused his injuries rather than the conditions of the Lounge. However, Diczok testified that the Lounge was dimly lit with the curtains closed, [DE 46 at 89:13–25; 90:1–5], and that he tripped his left foot over the corner of the table's square base. *Id.* at 38:1–25; 69:1–10; 107:5–14. Therefore, viewing the evidence in the light most favorable to Diczok, the substantial factors leading to Diczok's fall remain a question of material fact.

## CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgement is granted-in-part because Diczok has not shown that Celebrity actually participated in or approved the design of the table. Defendant's Motion as to the creation of a dangerous condition and the duty to warn is denied. Accordingly, it is

ORDERED THAT

(1) Defendant Celebrity Cruises, Inc.'s Motion for Summary Judgment [DE 43] is **GRANTED–IN–PART and DENIED–IN–PART.**

(2) Pursuant to the Court's Trial Order [DE 12], the parties' joint pretrial stipulation is due **July 21, 2017.**

DONE AND ORDERED in Miami, Florida, this 20th day of June, 2017.